James Michael BLEVINS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–78–538.

Court of Criminal Appeals of Oklahoma.

Dec. 7, 1979.

Stipe, Gossett, Stipe, Harper & Estes, Oklahoma City, for appellant; G. Michael Blessington, Oklahoma City, of counsel.

Jan Eric Cartwright, Atty. Gen., William S. Flanagan, Asst. Atty. Gen., Timothy S. Frets, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, James Michael Blevins, hereinafter referred to as the defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–77–3256, for the offense of Robbery With a Dangerous Weapon, in violation of 21 O.S. 1971, § 801. His punishment was fixed at twenty-five (25) years' imprisonment, and from said judgment and sentence an appeal has been perfected to this Court.

The State's evidence established that on the afternoon of August 23, 1977, at approximately 2:30 p. m., the Shrimp Shop, a business in Warr Acres, Oklahoma, was robbed. The employee on duty, Lee Pickett, testified that the defendant entered the store, brandished a knife and demanded money. He took approximately $11.00 from Ms. Pickett's billfold and $40.00 of the store's money. She called the police and provided the officers with a description of the robber. She subsequently identified the defendant from a group of pictures and still later from a police lineup.

Defendant called five witnesses, all fellow employees at his place of employment. They each testified that, to their knowledge, defendant was at work on the afternoon in question.

The defendant asserts in his first assignment of error that he was denied his constitutional right to counsel at the lineup, and that the line-up was so tainted and suggestive that the trial court erred in not conducting a hearing on the admissibility of the in-court identification. The record does not reflect that defendant requested a hearing on the admissibility of the in-court identification, objected to testimony concerning the line-up or in-court identification or raised this issue in his motion for new trial. We have previously held that only those questions which were raised in the trial court, ruled on adversely, and then incorporated in the motion for new trial will be considered on appeal. See *Pierce v. State,* Okl.Cr., 491 P.2d 335 (1971) and *Stone v. State,* Okl.Cr., 442 P.2d 519 (1968), *Warner v. State,* Okl.Cr., 568 P.2d 1284 (1977) and *Anthamatten v. State,* Okl.Cr., 506 P.2d 959 (1973). In speaking to a similar assignment of error in *Warner v. State,* supra, we stated:

"We need only note that absolutely no request was made for a hearing to inquire into the conduct of the lineup. Further, absolutely no objection was taken at trial by the defense to the in-court identification of defendants. Lastly, no objection was made at trial to the manner in which the prosecutor inquired of his witnesses concerning their pretrial identification of defendants at the lineup. This being so, these issues were waived." 568 P.2d at 1287.

Defendant contends in the second assignment of error that the trial court erred in failing to grant a new trial based on the fact that a juror fell asleep during the proceedings. Defendant has likewise failed to preserve this issue for appeal in that it was raised for the first time in defendant's motion for new trial. It is the duty of defense counsel to timely apprise the trial court of juror misconduct to afford the opportunity to provide remedial action. In speaking to this specific issue in *United States v. Curry,* 471 F.2d 419 (5th Cir. 1973) the rule was set forth as follows:

"Counsel may not permit juror misconduct or inattentiveness to go unnoticed, thereby sewing a defect into the trial, and later claim its benefit." 471 F.2d at 422.

See also *Randleman v. State,* Okl.Cr., 552 P.2d 90 (1976) and *United States v. Carter,* 433 F.2d 874 (10th Cir. 1970).

The defendant urges in the third assignment of error that a police witness interjected two evidentiary harpoons which were so prejudicial as to deny defendant a fair trial. The alleged "harpoons" appear in the record as follows:

"Q. Describe to the jury, Officer Pitt, what further investigation you made in this case, sir.

"A. I conducted a continuing investigation into the case, I presented Miss Pickett at several later dates with numerous photographs of persons arrested and suspected with robbery charges. The pictures were obtained from the Oklahoma County Sheriff's Office Jail and presented to her and also—[Tr. 34].

"Q. After having had an occasion to come in contact with the defendant for the first time after the robbery in question, what further investigation, if any, reference the robbery in question?

"A. I retained, again from Oklahoma County Sheriff's Department, a total of six photographs, included in the photograph selection was that of the defendant." [Tr. 37].

The defendant argues that the officer's responses that the photographs were taken from the Sheriff's Office in fact, suggested to the jury that defendant possessed a criminal past.

We are of the opinion that the officer's remarks do, in fact, come dangerously close to inferring that defendant had committed another crime. However, considering the totality of the testimony we must agree with the trial court's finding that "the way the statement and the answer was made, it was in generality, it was not specific that this man was or his picture was taken from the county sheriff or what, he said pictures, he did not say this picture, he said pictures, it was in general—." [Tr. 40]. In *Reid v. State*, Okl.Cr., 478 P.2d 988 (1970) it was contended that comments from prosecution witnesses that the accused had been in previous trouble were grounds for reversal, but we stated:

"[W]e are of the opinion that the statements were harmless since they did not specifically refer to any prior criminal convictions." 478 P.2d at 1000.

■ Defendant next alleges that the closing argument of the prosecuting attorney was directed to the passion and prejudice of the jury. Although the defendant generally refers to the entire closing argument the only example set forth by the defendant in his brief appears as follows:

"That the peace and dignity of Oklahoma County is at stake here, the issue of whether or not you will tolerate activity of this nature . . ." [Tr. 126].

This assignment of error is once again improperly before this Court in that the record does not reflect that the defendant objected to the same. We have repeatedly held that when an improper statement is made, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the statement and, in the event the objection is overruled, the same should be preserved and argued in the motion for new trial, and if this is not done the defendant is deemed to have waived any objection. See *Stiner v. State*, Okl.Cr., 539 P.2d 750 (1975), *Jones v. State*, Okl.Cr., 557 P.2d 447 (1976) and *Overstreet v. State*, Okl.Cr., 483 P.2d 738 (1971). Assuming arguendo that the asserted error had been properly preserved, the statement would have fallen within the liberal freedom of speech and wide-range of discussion, illustration and argumentation rule and was not so grossly improper and unwarranted as to have affected the defendant's rights. See *Battle v. State*, Okl.Cr., 478 P.2d 1005 (1970) and *Mansfield v. State*, Okl.Cr., 556 P.2d 632 (1976).

■ Defendant finally contends that the punishment is excessive. Considering the nature of the offense and that this is defendant's third felony conviction, we cannot conscientiously find that a sentence of twenty-five (25) years is excessive.

The judgment and sentence is accordingly *AFFIRMED*.

CORNISH, P. J., and BRETT, J., concur.