**John Leroy HEAVENER, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–83–406.**

Court of Criminal Appeals of Oklahoma.

Sept. 5, 1985.

Thomas J. Ray, Jr., Asst. Public Defender, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Thomas L. Spencer, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

John Leroy Heavener was convicted in Oklahoma County District Court of Rape in the First Degree, Oral Sodomy, and Anal Sodomy. He received sentences of thirty years', ten years', and ten years' imprisonment, respectively.

Appellant was a neighbor of the victim, T.M., on the evening of July 1, 1982, and was allowed into T.M.'s apartment, where she lived alone, on the pretext of using her telephone book. T.M. testified that over a seven to seven and one-half hour period she was repeatedly raped and sodomized by appellant who wielded a knife. Appellant testified they had sexual relations, but with each other's consent.

Appellant claims his Fifth Amendment right to silence was violated when the prosecutor was allowed to inquire of a police detective, and also later of appellant, whether appellant ever told the officer of certain people he allegedly met and drank with after he left T.M.'s apartment. Each answered that he had not previously told the police of these people.

■■■■ We note that appellant waived his right to remain silent and gave a statement to the police. When this is so, it is not improper to comment on a defendant's previous failure to disclose information later asserted at trial. *Costilla v. State*, 609 P.2d 788 (Okl.Cr.1980); *Sands v. State*, 542 P.2d 209 (Okl.Cr.1975). When a defendant has waived his right to remain silent, he may not later claim his right has been infringed when his silence as to certain facts is used to impeach his testimony.

Appellant complains that the State denied him the opportunity to interview the prosecutrix prior to trial. Immediately before T.M. was to testify, defense counsel moved to quash her testimony on this basis. The prosecutor advised the trial judge that the prosecutrix continually advised him that she did not want to speak with defense counsel.

One afternoon prior to trial, T.M. was in the prosecutor's office and defense counsel had the opportunity to speak with T.M. Defense counsel did not attempt to conduct an interview. The trial judge refused the defense motion to quash and also a motion for continuance. Instead, an interview of

T.M. was allowed during a recess prior to her testifying at trial.

■ We find no error in the trial court's ruling. While it is true as argued by appellant that the State cannot deny the accused or his counsel the right to interview witnesses before trial, *Broadway v. State*, 494 P.2d 331 (Okl.Cr.1972), it is also true that a witness may not be compelled to submit to an interview, *id.* It does not appear that the State attempted to secrete T.M.'s testimony from the defense, as defense counsel readily admitted after interviewing her. In fact, she testified and was cross-examined at preliminary hearing and she later consented to the interview at trial. The State did not know T.M.'s address and refused to give the defense her telephone number because she had said she did not want to speak with defense counsel. As we noted in *Broadway*, if there is a danger of harm to the accused's defense in being denied an interview, a trial court may order the interview in its discretionary power.

The morning of the attack, T.M. went to the hospital where a rape examination was performed. The evidence collected was put into a sealed container according to the testimony of the examining doctor. The officer who picked it up from the hospital and delivered it to the crime lab for analysis did not testify at trial. Appellant contends that a proper chain of custody was not established for the rape kit evidence and it should not have been admitted into evidence. This assertion is based upon the failure of the transporting officer to testify of his handling and the examining doctor's failure to testify regarding the preservation of the specimen.

At trial, the examining doctor described collecting the samples and of having them put into a kit which was sealed. Officer Montgomery testified that his assistant, whose signature appeared on the kit, picked it up and delivered it to the crime lab. Janice Davis, a chemist at the crime lab, testified that she received the sealed rape kit and signed it herself. The kit with the signatures was introduced at trial.

■ To properly admit physical evidence the State must lay a foundation showing it is substantially in the same condition as at the time of the crime. *Rudd v. State*, 649 P.2d 791 (Okl.Cr.1982). Within a reasonable certainty, it must be shown that the evidence has not been altered or tampered with in any important aspect. However, "[t]he State is not required to exclude all possibilities of alteration." *Id.* at 795. The record in the present case sufficiently supports with reasonable certainty a belief that the integrity of the samples was maintained until trial. Though not excluding every possibility of tampering, there is nothing that suggests the evidence may have been altered.

■ In a prosecution for rape, evidence of the complaining witness' sexual conduct, except with the accused or in the accused's presence, is not admissible to prove consent. 22 O.S.1981, § 750. Appellant contends that the trial court erred in not allowing the same evidence in for another purpose, that is for impeaching the testimony of T.M. She testified that she was not emotionally involved with any men at the time of the attack. The medical history taken by the examining physician indicated T.M. had had sexual relations with someone one week prior to the incident.

■ We agree with the trial court's ruling that the evidence was irrelevant. The evidence was not probative of truthfulness, 12 O.S.1981, § 2608(B), and was not a proper subject for impeachment or rebuttal, 22 O.S.1981, § 750. The subject was not germane to any issue relating to guilt or innocence. The right to cross-examine does not extend to irrelevant issues which tend only to humiliate or embarrass. *Cameron v. State*, 561 P.2d 118 (Okl.Cr.1977).

Appellant complains of a number of remarks by the prosecutor which he claims were improper and prejudiced him. Those comments which were not objected to have been reviewed for fundamental error only and we find none. *Jeffries v. State*, 679 P.2d 846 (Okl.Cr.1984).

■ A comment which defense counsel did object to made reference to protecting the citizens of Oklahoma County against "what we have proven what he can do here." The prosecutor was stopped at this point. While the remark tended to make an improper point, we do not consider it so arousing of societal alarm as to call for reversal. *See Capps v. State*, 674 P.2d 554 (Okl.Cr.1984); *Welliver v. State*, 620 P.2d 438 (Okl.Cr.1980); *Blevins v. State*, 603 P.2d 1168 (Okl.Cr.1979); *Kirk v. State*, 561 P.2d 134 (Okl.Cr.1977).

■ He complains about a remark made by the prosecutor which went outside the evidence offered at trial. His objection to the comment was sustained and the jury admonished to disregard the statement. The error was properly cured by these measures. *Kitchens v. State*, 513 P.2d 1300 (Okl.Cr.1973).

■ The freedom of argumentation is wide and for error to result in reversal, the remarks must determine the verdict. *Black v. State*, 663 P.2d 22 (Okl.Cr.1983). We find that that did not occur herein.

Appellant argues that by reason of an accumulation of the previous errors, he was so prejudiced as to warrant reversal. He relies on our opinion in *Lovell v. State*, 455 P.2d 735 (Okl.Cr.1969), where we reversed on the basis of an accumulation of errors, none of which alone were grounds for reversal, but taken together they were. We do not find that situation herein. The previous assignments were not errors, and so there is not an accumulation of error. *McDonald v. State*, 674 P.2d 51 (Okl.Cr. 1984).

Appellant asserts that his sentences are excessive in view of his personal history and the favorable conclusions reached by the trial judge. The favorable points in his history include the fact that he was married, had two children and had only one prior felony conviction occurring four years before this incident. The favorable comment of the trial judge was that he did not believe all of T.M.'s testimony, but he never stated how or why he did not accept it.

■ We find the verdicts and sentences well supported by the evidence. The physical evidence collected from the victim's apartment and her injuries and examination all proved consistent with T.M.'s testimony and her prior statements to the police. Moreover, appellant testified that his sexual relations with T.M. were consensual, involved one act of intercourse, and that there was no anal sex.

The lab results revealed the presence of semen in T.M.'s anus. The evidence in the instant case indicated an assault which spanned over at least a seven hour period. The examining doctor testified that the signs of trauma were consistent with violent intercourse. According to the State's evidence, appellant wielded a dangerous weapon and repeatedly raped and sodomized T.M. During the attack, appellant stabbed the knife into the mattress and into the hardwood floor next to T.M.'s head. The sheet, mattress and floor all had stab marks in them.

The sentences imposed in this case do not shock the conscience of this Court and are within the statutory limits. *Edwards v. State*, 663 P.2d 1233 (Okl.Cr.1983).

Finding no error warranting reversal or modification, judgments and sentences are AFFIRMED.

BRETT, J., concurs.

PARKS, P.J., not participating.